Jaymie Parkkinen (SBN 318394)
jparkkinen@taulersmith.com
Camrie Ventry (SBN 355853)
cventry@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Hien Nguyen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIEN NGUYEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DIAMEDICAL EQUIPMENT USA, LLC, a Michigan limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATION OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)**<br><br>2. **INTRUSION UPON SECLUSION**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Hien Nguyen ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to his own conduct and on information and belief as to all other matters:

## INTRODUCTION

1.     Defendant DiaMedical Equipment USA, LLC ("Defendant") operates a commercial website, www.diamedicalusa.com (the "Website"), through which it markets and distributes medical equipment and supplies used in healthcare training environments. A reasonable consumer visiting the Website expects that any interactions or communications with the Website will remain private and be used solely to facilitate legitimate commercial or informational purposes.

2.     Instead, Defendant configured the Website to operate as a data surveillance tool. Without consumers' knowledge or consent, Defendant deployed sophisticated third-party tracking technologies that intercept and record visitors' interactions with the Website in real time, enabling Defendant and its partners to monitor user activity, identify individual consumers, and extract detailed behavioral and commercial intelligence.

3.     Among the third parties receiving this data is LiveRamp, a data brokerage company. Data brokers aggregate and analyze consumer information collected across multiple sources and contexts, compiling detailed consumer profiles that are sold, licensed, or otherwise leveraged for commercial gain—often without consumers' knowledge or meaningful control.

4.     Defendant embedded software provided by LiveRamp (the "Tracking Beacon") into the Website. This technology is designed to recognize and distinguish website visitors, including those who do not directly identify themselves by submitting forms or creating accounts, thereby enabling tracking of users who would otherwise remain anonymous.

5.     According to LiveRamp, its technology is designed to identify and recognize website visitors by linking their online activity to a persistent identity. In

2                              CLASS ACTION COMPLAINT

practice, this means that when a user visits a website containing LiveRamp's code, information about that visit such as device signals, browsing activity, and other identifiers is collected and used to help determine who that user is, even if they have not affirmatively identified themselves. LiveRamp combines this information with data from other sources to build a unified profile that allows the same individual to be recognized across different websites, devices, and interactions over time. These capabilities enable businesses to move beyond anonymous web traffic and instead monitor, analyze, and re-engage specific individuals based on their behavior.

6.      Defendant deployed the Tracking Beacon not to support website functionality, but to facilitate the identification of visitors and to convert their browsing activity into commercially valuable data. This process involves transmitting identifying signals associated with users' visits to external parties for matching, profiling, and downstream commercial use.

7.      That is precisely what occurred here. When Plaintiff, a California resident, visited Defendant's Website, the embedded Tracking Beacon caused Plaintiff's browser to generate and transmit identifying signaling information related to the visit. Through this process, Plaintiff's otherwise anonymous browsing activity was captured and linked to a broader identity profile, transforming a private website interaction into a traceable and monetizable data record.

8.      The California Invasion of Privacy Act ("CIPA") prohibits installing or using a "trap and trace device" without first obtaining consent or a court order. Cal. Penal Code § 638.51(a). A "trap and trace device" includes any technology that captures the incoming impulses identifying the routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication. Cal. Penal Code § 638.50(c).

9.      By deploying the Tracking Beacon, Defendant converted ordinary website browsing into a system of data extraction and consumer identification. Plaintiff brings this action on behalf of a class of California consumers to enforce CIPA's

3                           CLASS ACTION COMPLAINT

prohibition on the use of trap and trace devices without consent, and to remedy Defendant's invasion of privacy through the covert capture and transmission of consumers' identifying information.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a proposed class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are 100 or more proposed class members, and minimal diversity exists.

11.     CIPA provides statutory damages of $5,000 per violation. Cal. Penal Code § 637.2. Publicly available web analytics estimate that Defendant's Website receives approximately 9,000 unique visitors per month, or approximately 108,000 visits during a twelve-month period. Even assuming conservatively that only 84 of those monthly visitors were California residents during the one-year limitations period applicable to CIPA claims, the statutory damages attributable to those visits alone would exceed $5,040,000. This figure is calculated as approximately 1,008 California visits over a twelve-month period multiplied by $5,000 per violation. Eighty-four monthly California visitors represent less than 1% of the Website's estimated monthly traffic. The amount in controversy therefore exceeds the jurisdictional threshold required under CAFA based on the trap and trace claim alone.

12.     This Court has personal jurisdiction over Defendant because Defendant purposefully directs its business activities toward California consumers and derives substantial commercial benefit from those activities. Defendant operates the Website and actively solicits and serves consumers, including those located in California. Through the Website, Defendant markets and sells medical equipment and related products used in healthcare education and training, and encourages users to engage with its platform through account features, purchasing tools, and customer support channels designed to cultivate ongoing commercial relationships. Defendant

4                                    CLASS ACTION COMPLAINT

intentionally makes these offerings available to California consumers and derives value from their use of the Website.

13. Defendant operates a highly interactive commercial website through which it markets and sells its products directly to consumers, including consumers located in California. The Website invites users to browse product categories, search for specific items, request quotes, place orders, and engage with sales and support services. These features require consumers to interact with the Website by submitting search queries and other inputs that communicate information about their purchasing interests, institutional needs, and browsing activity. Defendant uses the Website as a primary channel to engage with and cultivate consumers, including those located in California.

14. In addition to these consumer-facing features, the Website operates through numerous scripts, tracking technologies, and other code that execute within a consumer's web browser when the Website loads. These technologies generate multiple technical communications between a consumer's device, Defendant's servers, and third-party platforms during the course of a visit.

15. As part of its marketing, analytics, and advertising operations, Defendant embedded the Tracking Beacon described herein into the Website. When a consumer accesses the Website, the Tracking Beacon automatically executes within the consumer's browser and captures, without limitation, routing, addressing, and signaling information associated with the consumer's electronic communications with the Website. The Tracking Beacon then transmits this information to Defendant and its advertising and analytics partners so that they may measure user activity, analyze consumer behavior, and facilitate targeted advertising and marketing analytics. Defendant intentionally deploys the Tracking Beacon on the devices of consumers who access the Website, including consumers located in California, and derives commercial benefit from the collection and use of that information.

16. When a consumer accesses the Website, the consumer's browser sends a

CLASS ACTION COMPLAINT

request to Defendant's servers that includes the consumer's Internet Protocol ("IP") address. An IP address allows a website operator to determine the approximate geographic location of the consumer. Defendant therefore receives and processes a consumer's IP address before transmitting the requested webpage and its embedded Tracking Beacon to the consumer's browser.

17. After receiving the request containing the consumer's IP address, Defendant's servers transmit Website content and embedded tracking code to the consumer's device. The Tracking Beacon then executes within the consumer's browser and captures identifying signaling information associated with the visit. Defendant thus deploys and causes the Tracking Beacon to execute on devices after receiving information indicating the geographic location of the consumer, including when the consumer is located in California.

18. Defendant retains the technical ability to control access to its Website based on IP addresses or other device identifiers and has the capability to restrict or block users from particular geographic locations. Defendant could prevent California consumers from accessing the Website or from receiving the embedded Tracking Beacon but has chosen not to do so. Instead, Defendant knowingly permits consumers located in California to access the Website and intentionally deploys its Tracking Beacon on those consumers' devices when they do so.

19. Plaintiff accessed Defendant's Website while physically located in California. During Plaintiff's visit, Defendant's Tracking Beacon executed within Plaintiff's browser and captured Plaintiff's routing, addressing, and signaling information associated with his communications with the Website. Defendant caused the Tracking Beacon to be transmitted to and executed on Plaintiff's device while knowing that Plaintiff was located in California based on the IP address associated with his request.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred

CLASS ACTION COMPLAINT

in this District, including Plaintiff's access to and use of the Website from within this District and Defendant's collection, use, and transmission of Plaintiff's data in connection with that activity. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is subject to personal jurisdiction in this District and therefore is deemed to reside here for venue purposes.

## PARTIES

21. Plaintiff Hien Nguyen is an individual, citizen, and resident of California.

22. Defendant DiaMedical Equipment USA, LLC is a limited liability company formed under the laws of Michigan and maintains its principal place of business at 31440 Northwestern Highway, Suite 150, Farmington Hills, Michigan 48334.

23. Plaintiff alleges the fictitiously named defendants captioned hereinabove as Does 1 through 25, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions, and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are presently unknown to Plaintiff, and Plaintiff will amend this Complaint to assert the true names and capacities of such fictitiously named defendants when they have been ascertained. For convenience, each reference herein to the named Defendant shall also refer to the Doe defendants.

## FACTUAL ALLEGATIONS

**A.** *The Tracking Beacon Extracts and Transmits Consumer-Identifying Signals.*

24. The Website's Tracking Beacon does not simply facilitate the delivery of webpages. They are engineered to extract and transmit a visitor's identifying routing, addressing, and signaling information for a separate purpose: to enable third-party identity matching and monetization.

25. In ordinary browsing, certain technical exchanges occur so a browser can

7

CLASS ACTION COMPLAINT

request and receive a page. But the identifying information at issue here is distinct. The Tracking Beacon deliberately captures and sends *additional* consumer-identifying signals to third-party data brokers so the brokers can determine who the consumer is (or likely is) and link that visit to an identity profile. That extraction is not required to render the Website; it is implemented to create commercial value from Website visitors. The Tracking Beacon has no functional role in delivering website content; its sole purpose is to extract consumer-identifying signals for deanonymization and profiling.

26. The additional consumer-identifying signals captured by the Tracking Beacon include, without limitation, the addressing and routing data embedded in a consumer's web requests and the Website's responses; data that functions as the communication's "to/from" and routing instructions that can be used to recognize and link a consumer's communications over time.

27. In practical terms, the Tracking Beacon captures and transmits information such as: (i) the specific page and resource addresses the visitor requests from the Website (including paths and parameters identifying the content being requested); (ii) referrer and source fields showing how the visitor arrived at the Website and the prior page or channel that directed the request; (iii) browser- and device-signaling fields that describe the visitor's client environment (e.g., browser family and version, operating system family and version, language/locale settings, time zone, screen and rendering characteristics, and related client "fingerprint-like" attributes); and (iv) unique request and session identifiers and timestamps generated during the visit that allow multiple page requests to be grouped and attributed to the same source.

28. This information is distinct from the substance of the pages a visitor seeks to view. It is the identifying signaling and routing data that makes the visit linkable (i.e., data "reasonably likely to identify the source" of the visitor's electronic communications). Defendant captures and transmits this information through the

CLASS ACTION COMPLAINT

Tracking Beacon not to display the Website, but to enable LiveRamp to recognize the consumer and associate the visit with an identity profile for targeting and monetization.

29. The Website functions not merely as a promotional platform, but as a tool consumers rely on to access medical and healthcare supplies. Consumers use the Website to search for medical equipment, review products, request quotes, and evaluate purchasing options based on clinical needs. A consumer's interactions with these features can reveal detailed information about their areas of medical concern and the types of care environments in which they operate. These interactions may also reflect financial means, and other commercially sensitive considerations tied to healthcare-related activities. When such user-level signals are linked to an identity profile, they become attributable to a specific individual or institution rather than an anonymous browsing session. Indeed, LiveRamp admits that the value of these signals is that they can be used to determine *who* is behind the visit.

**B.   *LiveRamp Uses Captured Signals To Identify Consumers.***

30. LiveRamp sells the Tracking Beacon, which comprises tracking technology designed to identify website visitors who do not submit forms, log in, or otherwise provide identifying information during a visit.

31. The Tracking Beacon here operated in three steps:

   a. **Capture.** *First*, when a webpage loads, the Tracking Beacon captured the incoming impulses and consumer-identifying headers and signals that reveal the source of the consumer's electronic communications with the Website, such as page/resource addresses requested, referrer/source fields, browser/device signaling fields, and session/request identifiers sufficient to distinguish the consumer and support identity matching.

   b. **Transmit.** *Second*, the Tracking Beacon sends that consumer-identifying information to LiveRamp during the Website visit. This

CLASS ACTION COMPLAINT

process enables recognition of the same consumer across pages and repeat visits by using identifiers stored in the visitor's browser.

c.   **Match.** *Third*, LiveRamp correlates the transmitted visit signals (such as referrer/source information and browser/device signals) with information in its own databases and other records to determine the likely identity of the consumer, and to associate the visit with an identity profile used for follow-on targeting.

32.   Through this process, the Website visit is converted into a linkable record associated with a consumer identity profile that can be leveraged for targeting, measurement, and monetization beyond the Website itself.

33.   During Plaintiff's visit to the Website on or around November 30, 2025, Defendant caused the Tracking Beacon to run on Plaintiff's device and to capture and transmit Plaintiff's identifying routing, addressing, and signaling information to LiveRamp in real time. Defendant did not obtain informed, express consent for this practice and did not obtain a court order authorizing it.

**C.   *The Commercial Exploitation of Consumers' Profiles.***

34.   Once a consumer's identifying signals are linked to their broker-created profile, the visit can be used to enrich that profile and to support targeting far beyond the context of the Website visit. In this ecosystem, the value of the Tracking Beacon is its ability to identify the consumer and attach the visit to an identity record.

35.   Data brokers openly market the ability to convert ordinary web activity into intimate, individualized profiles. The CEO of the world's largest data broker recently bragged about the staggering extent to which data brokers secretly track internet users:

> [W]e know who she is, what she watches, what she reads, and who she lives with . . . Through the power of connected identity, we also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys. . . . We know that [she] has two children and that her kids drink lots of premium

fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see that [her] income has not been keeping pace with inflation.[1]

36.    LiveRamp used Plaintiff's visitor-identifying data to associate Plaintiff's Website visit with an identity profile and to enrich that profile with information about Plaintiff's interaction with the Website. Defendant obtains commercial value from this arrangement, including by enabling more precise audience building and targeted solicitation.

37.    The consequences extend beyond advertising. Once consumer-identifying signals are linked to a broker-maintained identity profile, the data becomes portable: it can be sold, licensed, queried, or otherwise disclosed to a wide range of third parties and repurposed outside the context in which it was collected.

38.    According to the Brennan Center for Justice:

Among the main purveyors in this surveillance capitalism ecosystem are data brokers—companies that collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell. . . . Myriad entities buy this information. For example, financial institutions and insurance firms use data for identity verification and risk assessments. Advertising companies use data to offer more relevant and targeted advertisements. More troublingly, data brokers have sold personal information to predatory loan companies, stalkers, and scammers, as well as to political consultants . . . that can use data to send voters disinformation and attempt to skew electoral outcomes. Data brokers also sell data to foreign actors whose uses of the information are not constrained by U.S. law. And . . . law enforcement and other government agencies (including state and local law enforcement, the FBI, the IRS, the Drug Enforcement Administration, the Department of Defense, and the Department of Homeland Security) have secretly been paying data brokers to access vast databases of personal information,

---

[1] Lucas Ropek, *Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users*, March 15, 2025 (gizmodo.com).

CLASS ACTION COMPLAINT

including geolocation data, without any warrant, court order, or even subpoena.[2]

39.    The foreseeable risk created by Defendant's conduct is therefore not abstract: by converting Plaintiff's Website visit into a linkable identity profile and exporting it into the broker ecosystem without consent, Defendant created an enduring data linkage that can be exploited long after Plaintiff's Website visit ends and far beyond the purpose for which Plaintiff accessed the Website.

40.    Defendant's conduct has caused, and continues to cause, injury to Plaintiff, and other similarly situated consumers, in concrete ways; Plaintiff's communications with the Website were converted into a linkable identity profile without Plaintiff's consent; Plaintiff lost control over how the extracted identifying data is used and disseminated; and Plaintiff faces an ongoing risk that this unlawfully created identity profile will be repurposed, shared, or sold within the data broker ecosystem for uses far removed from Plaintiff's purpose in visiting the Website.

41.    Defendant's deployment of the Tracking Beacon intentionally interfered with Plaintiff's private affairs in a manner a reasonable person would find highly offensive. It took what should have been an ephemeral website visit and disclosed the identifying information to LiveRamp for deanonymization and cross-site and context exploitation. The disclosure to LiveRamp itself, made without consent and for identity matching and monetization, constitutes a concrete invasion of privacy because it attributes personal browsing activity to a consumer's identity profile and exports it outside the consumer-website relationship.

## CLASS ACTION ALLEGATIONS

42.    **Class Definition.** Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the "Class" defined as follows:

---

[2] Emile Ayoub and Elizabeth Goitein, *Closing the Data Broker Loophole*, February 13, 2024 (brennancenter.org).

12                                    CLASS ACTION COMPLAINT

**All persons in California whose identifying routing, addressing, or signaling information was captured as a result of visiting the Website during the applicable limitations period.**

43. Excluded from the Class are: (i) Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; (ii) Defendant's officers and directors; (iii) the Court, the Court's staff, and any judicial officer assigned to this case and members of their immediate families; and (iv) any person who timely and validly opts out of the Class.

44. Plaintiff reserves the right to amend the Class definition as discovery and the Court's rulings warrant.

45. **Rule 23 Reference.** Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

46. **Numerosity.** The Class is so numerous that joinder is impracticable. The Website is a widely used consumer website. The Tracking Beacon operated during Website visits and applied in the same manner to California visitors. Class members are therefore readily in the thousands and can be identified through objective criteria, including Website visit records and data flows to LiveRamp.

47. **Commonality.** Common questions of law and fact exist, including:

    a. Whether Defendant deployed the Tracking Beacon on its Website;

    b. Whether the Tracking Beacon captured and transmitted identifying routing, addressing, and signaling information from California consumers visiting the Website;

    c. Whether Defendant installed or used a trap and trace device or process within the meaning of Cal. Penal Code § 638.50(c);

    d. Whether Defendant obtained consent and/or a court order required by Cal. Penal Code § 638.51;

    e. Whether Defendant's covert deployment of the Tracking Beacon to identify individuals and transmit their identifying information to

13          CLASS ACTION COMPLAINT

LiveRamp constituted an intrusion upon seclusion under California law; and

    f.    The proper measure of statutory damages and the scope of injunctive relief.

48.    **Predominance.** Common issues predominate. Defendant's deployment of the Tracking Beacon was uniform, and the key issues are capable of resolution using common proof, including Defendant's Website implementation, technical logs, vendor documentation, and LiveRamp's records. Individualized inquiries are not necessary to determine liability because the challenged conduct is the same for all Class members.

49.    **Typicality.** Plaintiff's claims are typical of the Class because Plaintiff, like every Class member, visited the Website from California and was subjected to the same uniform practice: the Tracking Beacon's capture and transmission of identifying routing, addressing, and signaling information.

50.    **Superiority.** A class action is superior to other methods of adjudication. The statutory damages available for each Class member are not likely to support individual litigation, and resolving these claims in a single proceeding will conserve judicial resources, avoid inconsistent outcomes, and provide an efficient mechanism for relief.

51.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests align with those of the Class, and Plaintiff has retained counsel with experience litigating privacy and class actions. Plaintiff has no interests antagonistic to the Class.

52.    **Injunctive Relief.** Defendant has acted on grounds generally applicable to the Class by deploying the Tracking Beacon in a uniform manner on the Website. Plaintiff therefore seeks final injunctive and declaratory relief appropriate to the Class as a whole, including an order prohibiting Defendant from capturing and transmitting identifying routing, addressing, and signaling information via the Tracking Beacon without the consent and/or court order required by California law.

53.    **Notice.** Plaintiff will propose and submit to the Court a plan for providing the best notice practicable under the circumstances to Class members, including individual notice to the extent Class members can be identified through reasonable effort, and will request that such notice be provided consistent with Fed. R. Civ. P. 23 and due process.

## COUNT I: VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW, CAL. PENAL CODE § 638.51

### (*On Behalf of Plaintiff and the Class*)

54.    Plaintiff and the Class incorporate by reference all preceding paragraphs as though fully set forth herein.

55.    CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

56.    CIPA prohibits any person from installing or using a trap and trace device without first obtaining consent or a court order. Cal. Penal Code § 638.51(a).

57.    Defendant installed and used the Tracking Beacon on the Website. The Tracking Beacon is "device or process" within the meaning of § 638.50(c) because it operates during Website visits to capture incoming electronic impulses and extract visitor-identifying routing, addressing, and signaling information.

58.    As alleged herein, the Tracking Beacon captures and transmits, among other things, addressing and routing information, referrer and source fields, browser- and device-signaling fields, and unique request and session identifiers and timestamps—information reasonably likely to identify the source of a visitor's electronic communications.

15                    CLASS ACTION COMPLAINT

59.    The Tracking Beacon is deployed for the purpose of enabling LiveRamp to recognize the same visitor across multiple communications and to associate the visitor's Website activity with an identity profile used for targeting and monetization.

60.    Defendant installed and used the Tracking Beacon without first obtaining a court order authorizing the installation or use of a trap and trace device or process.

61.    On or around November 30, 2025, Plaintiff visited the Website from California. During Plaintiff's visit, Defendant caused the Tracking Beacon to run on Plaintiff's device and to capture and transmit Plaintiff's identifying routing, addressing, and signaling information to LiveRamp.

62.    Defendant deployed the Tracking Beacon in the same manner for other California visitors to the Website during the class period, causing the same capture and transmission of identifying routing, addressing, and signaling information.

63.    Plaintiff did not provide express, informed consent to Defendant's installation or use of the Tracking Beacon, including Defendant's capture and transmission of Plaintiff's identifying routing, addressing, and signaling information to LiveRamp for identity matching and monetization. Defendant likewise did not obtain express, informed consent from other Class members.

64.    By installing and using the Tracking Beacon without the consent and/or court order required by CIPA, Defendant violated Cal. Penal Code § 638.51.

65.    Plaintiff and members of the Class suffered injury because Defendant captured and transmitted their identifying routing, addressing, and signaling information without consent. That capture and third-party disclosure for identity matching is a concrete invasion of privacy because it interferes with visitors' private affairs and discloses their identifying information to LiveRamp for deanonymization and cross-site profiling—conduct a reasonable person would find highly offensive when imposed without consent.

66.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Class seek statutory damages and such other relief as the Court deems proper for Defendant's installation

CLASS ACTION COMPLAINT

and use of a trap and trace device or process without the consent and/or court order required by law. Plaintiff also seeks declaratory and injunctive relief appropriate on a classwide basis under Rule 23(b)(2) to prohibit Defendant's continued deployment and use of the Tracking Beacon as alleged herein and to require appropriate remedial measures, including deletion and cessation of retention of information captured or received through the Tracking Beacon and commercially reasonable steps to direct Defendant's service providers to do the same to the extent practicable.

## COUNT II: INTRUSION UPON SECLUSION

### (*On Behalf of Plaintiff and the Class*)

67. Plaintiff and the Class incorporate by reference all preceding paragraphs as though fully set forth herein.

68. Under California law, a defendant is liable for intrusion upon seclusion when it intentionally intrudes into a private place, conversation, or matter in a manner that would be highly offensive to a reasonable person.

69. Defendant intentionally implemented and deployed the Tracking Beacon on the Website. The use of the Tracking Beacon was not incidental or inadvertent; it was purposefully embedded and configured to run when visitors accessed the Website.

70. By means of the Tracking Beacon, Defendant intruded into Plaintiff's and Class members' private affairs by capturing and transmitting information associated with their Website visits, including identifying routing, addressing, and signaling information and visit-level interaction data, and sending that information to LiveRamp for visitor recognition, matching, and downstream commercial exploitation.

71. Plaintiff and Class members had a reasonable expectation of privacy in the fact and manner of their browsing activity on the Website and in not having an otherwise anonymous visit converted into a linkable identity profile and conveyed off-site to third parties for identification, targeting, and exploitation.

72. Defendant's intrusion would be highly offensive to a reasonable person. Defendant used a consumer-facing Website as the intake point for a visitor-

17                                    CLASS ACTION COMPLAINT

identification process that operates in the background, without meaningful disclosure and without informed, express consent, to deanonymize individuals and export their identifying information to data brokers for commercial purposes. This practice is not necessary to deliver the webpages a consumer requests and instead serves to convert a visitor's activity into a commercially exploitable identity profile.

73. Plaintiff did not authorize Defendant to deploy third-party visitor-identification mechanisms on his device or to transmit his identifying information and visit data to data brokers for recognition, matching, targeting, or monetization. Class members likewise did not authorize such conduct.

74. Defendant's conduct was willful, intentional, and carried out with conscious disregard for the privacy rights of Website visitors. Defendant knowingly embedded and maintained third-party visitor-identification technology designed to deanonymize visitors and transmit their identifying information off-site for commercial use, while failing to provide meaningful disclosure or obtain informed, express consent. Defendant's conduct therefore constituted malice, oppression, and/or fraud within the meaning of Cal. Civ. Code § 3294, warranting an award of punitive damages.

75. As a direct and proximate result of Defendant's intrusion, Plaintiff and Class members suffered harm, including invasion of privacy, loss of control over their personal information, and the creation and dissemination of a linkable identity profile of their browsing activity outside the consumer-website relationship.

76. Plaintiff seeks all available relief, including damages on behalf of the Class, as well as injunctive and declaratory relief appropriate on a classwide basis under Rule 23(b)(2) to enjoin Defendant's uniform Tracking Beacon practices alleged herein and to require appropriate remediation, including deletion and cessation of retention of information collected or received as a result of those practices and commercially reasonable steps to direct Defendant's service providers to do the same to the extent practicable.

CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendant, and award the following relief:

1.       Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

2.       Declare that Defendant's conduct as alleged herein violates California Penal Code §§ 638.50(c) and 638.51;

3.       Declare that Defendant's conduct as alleged herein constitutes intrusion upon seclusion under California common law;

4.       Issue appropriate declaratory and injunctive relief directed at Defendant's uniform Tracking Beacon practices, including orders requiring Defendant to delete and cease retaining identifying routing, addressing, and signaling information captured or received through the Tracking Beacon, and to take commercially reasonable steps to direct its service providers, including LiveRamp, to do the same to the extent Defendant has the right or ability to do so;

5.       Award statutory damages to Plaintiff and the Class pursuant to Cal. Penal Code § 637.2;

6.       Award Plaintiff and the Class general and special damages in an amount to be proven at trial for Defendant's intrusion upon seclusion;

7.       Award injunctive relief requiring Defendant to cease installing and/or using the Tracking Beacon or any trap and trace device or process on the Website without lawful consent and/or the court order required by Cal. Penal Code § 638.51, and requiring such further injunctive relief as the Court deems just and proper;

8.       Award punitive and exemplary damages to the extent permitted by law;

9.       Award Plaintiff and the Class their reasonable attorneys' fees and costs to the extent permitted by law;

10.   Award pre-judgment and post-judgment interest as permitted by law; and

11.   Grant such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all issues triable to a jury.

DATED: March 20, 2026                    TAULER SMITH LLP

                                         */s/ Jaymie Parkkinen*
                                          Jaymie Parkkinen

                                         *Attorneys for Plaintiff*
                                         *Hien Nguyen*